IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BERNARD D. HOLLOMOND,**

    Petitioner,

v.                                                                                             Civil Action No. **3:19CV884**

**TRACY RAY,**

    Respondent.

**MEMORANDUM OPINION**

Bernard D. Hollomond, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his 2017 convictions in the Circuit Court of the City of Chesapeake, Virginia ("Circuit Court"). Hollomond argues that he is entitled to relief on the following grounds:[1]

    Claim One:     "Denial of right to a jury trial." (*Id.* at 5.)

    Claim Two:     "Sufficiency of the evidence." (*Id.* at 7.)

    Claim Three:     "Ineffective Assistance of Counsel – failed to protect Petitioner's right to a jury trial." (*Id.* at 8.)

Respondent moves to dismiss on the ground, *inter alia*, that Hollomond's claims lack merit. Hollomond has responded. (ECF Nos. 20–22.) For the reasons set forth below, the Motion to Dismiss (ECF No. 14) will be GRANTED, the § 2254 Petition will be DENIED, and the action will be DISMISSED.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions.

## I. PROCEDURAL HISTORY

On December 16, 2015, the Circuit Court denied Hollomond's motion for a mistrial, and a motion to strike, and convicted Hollomond of two counts of distribution and possession with intent to distribute a Schedule I or II controlled substance, third or subsequent offense. (ECF No. 16–1, at 1–2 (citing Va. Code Ann. § 18.2–248(C) (West 2020)).) The Circuit Court sentenced Hollomond to ten years on each count for a total of twenty years of incarceration. (*Id.* at 4.) Hollomond appealed, arguing that the Circuit Court "'erred in not granting [his] motion to strike as well as the renewal of the motion, as to all the charges'" and "erred in denying his motion for a mistrial and motion to set aside the verdict 'on the basis of [his] desire to withdraw his waiver of his jury trial rights.'" (ECF No. 16–2, at 1, 4 (alterations in original).) The Court of Appeals of Virginia denied his petition for appeal. (*Id.* at 1.) The Supreme Court of Virginia refused the petition for appeal. (ECF No. 16–3, at 1.)

Hollomond filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising claims similar to Claims One and Three of his § 2254 Petition. (ECF No. 16–4, at 1, 3.) The Supreme Court of Virginia dismissed the habeas petition. (*Id.* at 3.) Hollomond subsequently filed the instant § 2254 Petition. Underlying Hollomond's claims is the general premise that everyone except for Hollomond should be discredited as liars, including counsel and the Commonwealth's chief witness at trial. As discussed below, this premise is belied by the record.

## II. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear

2

and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### III. SUFFICIENCY OF THE EVIDENCE

In Claim Two, Hollomond argues "the evidence is not constitutionally sufficient to prove beyond a reasonable doubt that Petitioner possessed with the intent to distribute a schedule I/II controlled substance, third offense; two counts." (ECF No. 1, at 17.)[2] In essence, Hollomond argues that the confidential informant provided false testimony to incriminate Hollomond and that insufficient circumstantial evidence existed of his intent to distribute crack cocaine.

In rejecting Hollomond's sufficiency of the evidence argument, the Court of Appeals of Virginia aptly found:

> "When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99, 570 S.E.2d 875, 876–77 (2002)). "On appeal, we will consider the evidence in the light most favorable

---

[2] The Court finds it appropriate to address Claim Two first because Claims One and Three are both based on the underlying contention that Hollomond desired a jury trial, not a trial by the judge.

to the Commonwealth, as it prevailed in the trial court." *Whitehurst v. Commonwealth*, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014).

So viewed, the evidence established that on March 6, 2015, Jason Winn was working as a confidential information for the Chesapeake Police Department Narcotics Unit. Winn called a person known as "B-Mack," who was later identified as appellant, to arrange a meeting to purchase $100 worth of drugs, although no words identifying what was being purchased were used. Prior to Winn's meeting with B-Mack, the police searched Winn's person and vehicle and gave him $100. The police also arranged for audio and visual recording of the meeting. Winn gave B-Mack the $100 and, in exchange, received crack cocaine. After Winn met with B-Mack, the police searched Winn and found nothing other than the cocaine he purchased.

On March 12, 2015, Winn again called B-Mack and arranged a meeting to purchase $150 worth of cocaine. Prior to the meeting, the police searched Winn and his vehicle. The police gave Winn $150 and equipped his car with audio and video recording. Winn went to the designated meeting spot, a hotel. The police witnessed appellant carrying a load of laundry into Winn's car, and the car drove around to the other side of the hotel. After the meeting, the police searched Winn and found nothing other than the crack cocaine he purchased.

The police sent the drugs obtained from the events to the lab for analysis. The lab confirmed that the drugs were crack cocaine and weighed approximately 0.44 gram and 0.67 gram, respectively.

At the conclusion of the Commonwealth's evidence, appellant made a motion to strike, which the trial court denied. Appellant testified and denied selling drugs to Winn. Appellant said that on March 6, 2015, he met with Winn to talk to Winn about some watches and money that Winn owed him. Appellant said that on March 12, 2015, he again met with Winn to talk about the watches and money owed him. Appellant explained that he was carrying clothes to Winn to see if Winn was interested in any of them. Appellant admitted that he had a plastic bag in his hand on both occasions that he met with Winn.

At the conclusion of all of the evidence, appellant renewed his motion to strike, which the trial court denied. The trial court found appellant guilty of two counts of distribution of cocaine, third offense.[3]

---

[3] Appellant cites two pages in the December 16, 2015 transcript to show where the argument was preserved. On page 72, the following exchange occurred between appellant's counsel and the court:

> Ms. Haddeed: Your Honor, I would make a motion to strike for failure to present sufficient evidence as to both counts.
> The Court: That's it?
> Ms. Haddeed: That's it.
> The Court: Motion denied on both counts.

On page 89, the following exchange occurred between appellant's counsel and the court:

> Ms. Hadeed: Your Honor, I would renew my motion to strike.
> The Court: On the same basis as before?
> Ms. Hadeed: Correct.

4

Assuming that we reach the substance of appellant's rather vague arguments to the trial court, appellant now argues on appeal that the trial court erred in finding that the evidence was sufficient to convict him of distribution of cocaine because the confidential information was not reliable. First, he contends that the police did not adequately search Winn because it was not an "exhaustive" search. He asserts that the recovered drugs were in small amounts, so Winn could have concealed drugs "in other parts of his person." Second, he notes that Winn had outstanding drug charges and was an admitted cocaine addict. Lastly, appellant argues that the audio and video recordings did not show an exchange of drugs, nor did they capture appellant and Winn discussing the purchase of drugs. Appellant contends his explanation of what transpired in the car was plausible.

The trial court had the opportunity to see and hear the witnesses, as well as the audio and video recordings. The police officers testified about their searches of Winn and his vehicle before and after his meetings with appellant. The police explained that they searched Winn, his pockets, and his shoes. The police searched Winn's vehicle, including the "glove box, map pockets, center console, under the seat, in the seat," and under the rugs. The police did not discover any contraband on Winn's person or in his car. The police further testified that they did not promise Winn anything in exchange for his cooperation in the controlled buys. After hearing the Commonwealth's witnesses and appellant testify, the trial court found the Commonwealth's witnesses to be more credible.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving

---

The Court: On each charge, the Court will deny the motion to strike. During closing argument, appellant argued as follows:

> Thank you, Your Honor. At no point was Mr. Winn [the confidential informant] not under surveillance by the police department. Those are Ms. Abbey's words with regards to the surveillance and the so-called controlled buy. That's not actually the case because there's no one in the vehicle with Mr. Winn besides a key chain video camera that doesn't show much of anything, especially not on March 12. It doesn't show Mr. Winn and what he's doing. No one else is in the car with him, and although the detectives claim that they searched him, they didn't lift up his shirt past his waistband. They didn't have him drop his drawers. He was not thoroughly searched. He was kind of patted down.
>
> . . . .
>
> I would submit to the Court, there's ample opportunity for Mr. Winn who stands to gain a lot. Yes, he wasn't promised anything, but I highly doubt that Mr. Winn is here today out of the goodness of his heart to do the right thing, and he doesn't think that he's going to get something in exchange for both his cooperation and his testimony. He has a lot to gain. He's facing a felony charge himself.

5

> testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509–10, 500 S.E.2d 223, 235 (1998)).
>
> Contrary to appellant's arguments, the trial court did not err in denying the motions to strike, as the evidence was sufficient to convict appellant of two counts of distribution of cocaine.

(ECF No. 16–2, at 1–4 (footnote number altered from original) (alterations in original) (omission in original).)

In conducting the present federal habeas review, the findings of fact by the Circuit Court and the Court of Appeals of Virginia are presumed correct. *See* 28 U.S.C. § 2254(e); *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008). Hollomond has the burden of rebutting that presumption by clear and convicting evidence. *See* § 2254(e)(1). Contrary to Hollomond's desire here, federal courts sitting in habeas have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citation omitted); *see United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983) (citations omitted) (holding that federal habeas courts, when making a sufficiency of the evidence determination, do not weigh the evidence or review the credibility of witnesses). A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could find [proof of] guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. Despite Hollomond's argument

to the contrary, the evidence was sufficient for any rational factfinder to have found Hollomond guilty of two counts of distribution of cocaine, third offense.

The evidence clearly established that Hollomond twice sold crack cocaine to a confidential informant. The confidential informant called Hollomond in the presence of detectives, set up the meetings, and the calls were recorded. (*See, e.g.*, Dec. 10, 2015 Tr. 12–13, 23–24, 41, 53–54.) The detectives followed the confidential informant to the sites of the transactions, surveilled the site, and the transactions were recorded by audio and video. (*See, e.g.*, Dec. 10, 2015 Tr. 16–17, 22–26, 41, 53–55.) Subsequently, the confidential informant turned the cocaine over to police after receiving it from Hollomond. (*See, e.g.*, Dec. 10, 2015 Tr. 17–18, 26, 44.) Hollomond suggests that because "there is no direct evidence of any sale of narcotics to the CI" he could not be found guilty. (ECF No. 21, at 8.) First, Hollomond is incorrect, as there was direct evidence of him exchanging "U.S. currency for crack cocaine with the CI" recorded by video of the first drug sale. (Dec. 10, 2015 Tr. 41, 53.)[4] Overwhelming circumstantial evidence also existed that Hollomond twice sold cocaine to the confidential informant, and contrary to Hollomond's suggestion, such evidence also established his guilt. Moreover, Hollomond's insistence that the informant had the drugs beforehand, and it was a "setup" (*see e.g.,* ECF No. 21, at 8), and the police did not search the informant well enough, is not supported by anything in the record. Rather, the record establishes that the police thoroughly searched the confidential informant and his car prior to and after he purchased the cocaine from Hollomond. (*See, e.g.*, Dec. 10, 2015 Tr. 16, 18, 23–26, 42–43, 53–56, 64–65, 86–88.) The Circuit Court heard the consistent testimony of the police and the confidential informant, and then heard Hollomond's account of the events, and found the confidential informant's testimony credible, and Hollomond's testimony incredible.

---

[4] Hollomond admitted during his testimony that the video showed his hand with a plastic baggie in it. (Dec. 16, 2015 Tr. 83–85.)

Although Hollomond wants this Court to discredit the confidential informant's testimony as self-serving,[5] this Court is bound by the Circuit Court's credibility determination because Hollomond has not presented clear and convincing evidence to rebut the Circuit Court's findings. *See Gray*, 529 F.3d at 228.

As aptly summarized by the Court of Appeals of Virginia, the evidence presented at trial was sufficient for any rational factfinder to convict Hollomond of two counts of distribution of cocaine, third offense. Therefore, upon review of the record in this case, the Court concludes that the Court of Appeals of Virginia's decision was not an unreasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C § 2254(d). For these reasons, Claim Two lacks merit and will be DISMISSED.

### IV.   JURY TRIAL RIGHT

In Claim One, Hollomond argues that he was denied his right to a jury trial.[6] Hollomond contends that prior to trial he indicated to counsel that he wanted a jury trial, but on the day of trial, she told Hollomond just to go ahead with a bench trial. (ECF No. 1, at 15.) Hollomond contends that counsel "did not fully explain to him that he had a constitutional right to a jury trial and what

---

[5] Detectives explained that the confidential informant was arrested prior to March 6th, and he agreed to assist police to make his situation better. (Dec. 10, 2015 Tr. 67.) The informant testified that he was a convicted felon, had pending drug charges, and was helping police because it was "the right thing to do," and because he was hoping for some benefit on his charge, but that he had not been promised anything in exchange for his cooperation. (Dec. 16, 2015 Tr. 60–61, 63.) He also testified that he had been a drug addict for ten years. (Dec. 16, 2015 Tr. 67.) Thus, the Circuit Court heard this testimony but nevertheless found the informant credible.

[6] Hollomond argues this claim is brought under the Fourteenth Amendment; however, this is a Sixth Amendment right applicable to the states through the Fourteenth Amendment. *See* U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .") Moreover, to the extent that he claims this is a violation of the Virginia Constitution, such a claim is not cognizable in federal habeas. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (explaining that "federal habeas corpus relief does not lie for errors of state law").

waiving that right actually meant." (*Id.* at 16.) Thus, he argues that "he did not waive his right to a jury trial and he desired a jury trial at all times" and "if [he] inadvertently waived his right to a jury trial, it was not knowingly and intelligently waived." (*Id.* at 17.)

The Court of Appeals of Virginia reviewed this claim and found it lacking in merit. The Court of Appeals of Virginia explained as follows:

> Appellant next argues that the trial court erred in denying his motion for a mistrial and motion to set aside the verdict "on the basis of [his] desire to withdraw his waiver of his jury trial rights."
> On December 10, 2015, appellant pled not guilty to the two charges of distribution of cocaine. The trial court engaged in a colloquy with appellant regarding his plea. The trial court also had the following discussion with appellant about his waiver of a jury trial:
>> THE COURT: Are you ready for trial today? Are you ready to go ahead with trial today?
>> THE DEFENDANT: Yes.
>> THE COURT: Do you understand that you are being tried by the Court, that you would have had a right to be tried by a jury, but you have given up that right and ask to be tried by the judge, which is yours truly?
>> THE DEFENDANT: I thought that I would be tried by a jury.
>> THE COURT: You thought you would be tried by a jury?
>> THE DEFENDANT: Yes, sir.
>> THE COURT: Did you discuss trial by jury with your counsel?
>> THE DEFENDANT: Yes, we did.
>> THE COURT: We're here today without a jury. Is that a surprise to you?
>> THE DEFENDANT: Yes, it is.
>> THE COURT: Ms. Hadeed?
>> MS. HADEED: If I may have a moment to confer with my client.
>> THE COURT: Sure.
>
> After discussing the matter with his counsel, appellant told the trial court that he was ready to proceed without a jury. The trial court asked appellant: "You understand that you have a right to [a jury trial], but now you're waiving that right and proceeding?" Appellant responded affirmatively.
> The trial court found that appellant made his pleas knowingly, intelligently, and voluntarily. The bench trial commenced, but did not finish, on December 10, 2015. The matter was continued to December 16, 2015. Appellant filed a motion for mistrial and argued that he did not waive his right to a trial by jury. On December 16, 2015, the trial court denied appellant's motion for mistrial and stated that it "would accept the motion more as a motion to withdraw a waiver of the jury trial as opposed to a mistrial." The trial court held that appellant's waiver of a jury trial "was made knowingly and intelligently" and "after full advice of counsel."

9

> After the trial court found appellant guilty of the offenses, but before sentencing, appellant filed a motion to set aside the verdict. Again, he argued that he did not waive his right to a trial by jury. At the beginning of the sentencing hearing, the trial court heard evidence and argument regarding appellant's motion. The trial court denied the motion. The trial court stated:
>> The Court looked back at the colloquy that ensued between yours truly and [appellant] with regard to the issue of the jury trial, and the Court to went to some length to make sure, as I think the transcript reflects, to make sure that [appellant] understood what was going on and what his rights were.
>
> Appellant argues that the trial court erred by denying his motions for mistrial and to set aside the verdict because he wanted a trial by jury. He contends he should have been allowed to withdraw his waiver of a jury trial.
>
> "The right of a defendant to a jury trial in a criminal case is secured by Article 1, § 8 of the Constitution of Virginia." *Commonwealth v. Williams*, 262 Va. 661, 671, 553 S.E.2d 760, 764 (2001). "[O]nce a defendant makes a voluntary and intelligent waiver of this right, his request to withdraw that waiver and be tried by a jury is subject to the circuit court's discretion." *Id.*
>
> "[A] motion for withdrawal of waiver made after the commencement of the trial is not timely and should not be allowed." *Id.* (quoting *Thomas v. Commonwealth*, 218 Va. 553, 555, 238 S.E.2d 834, 835 (1977)).
>
> In this case, appellant knowingly waived his right to a jury trial at the beginning of the trial. He discussed the matter with his counsel and informed the court that he was ready to proceed with a bench trial. Then, after the trial had begun and had to be continued to a different date due to the late hour, appellant filed a motion for a mistrial, which the trial court considered a motion to withdraw his jury waiver. The Commonwealth already had presented four witnesses and introduced several exhibits, including the audio and video recordings. In response to appellant's motion on the second day of the trial, the trial court noted, "[j]ust because there's a lapse of time between the 10th and today in resuming the trial doesn't change that aspect of it." The trial court found that appellant's motion had "every indicia of obstruction and seeking to gain a benefit simply because we had to continue the trial from one day to the next," so the trial court denied the motion.
>
> After the trial court heard all of the evidence and found appellant guilty, appellant filed a motion to set aside the verdict and requested a jury trial. At that point of the proceeding, his motion was not timely. *Id.*
>
> Therefore, the trial court did not err in denying appellant's motions. The trial court found appellant's waiver to be knowingly and voluntarily made. Appellant's motions to withdraw his waiver were not timely, and the trial court did not abuse its discretion by denying appellant's motions for a mistrial and to set aside the verdict.

(ECF No. 16–2, at 4–7 (alterations in original).)

The Sixth Amendment provides, that "the accused shall enjoy a right to a . . . trial, by an impartial jury . . . ." U.S. Const. amend. VI. However, a defendant may waive his or her right to

10

a jury trial. Pursuant to section 19.2–257 of the Virginia Code, "if the accused plead not guilty, with his consent after being advised by counsel and the concurrence of the attorney for the Commonwealth, and of the court entered of record, the court shall hear and determine the case without the intervention of a jury." Va. Code Ann. § 19.2–257 (West 2020).[7] As the record establishes, Hollomond knowingly and voluntarily waived his right to a jury trial. Hollomond contends that counsel "did not fully explain to him that he had a constitutional right to a jury trial and what waiving that right actually meant." (ECF No. 1, at 16.) As the Circuit Court and the Court of Appeals determined, this statement defies belief.

Moreover, no matter what counsel explained to Hollomond, the Circuit Court specifically explained to Hollomond that he right to a jury trial and Hollomond agreed several times that he understood that right but was choosing to proceed with a trial by judge. The Circuit Court first asked Hollomond: "Do you understand that you are being tried by the Court, that you would have had a right to be tried by a jury, but you have given up that right and asked to be tried by the judge, which is yours truly?" (Dec. 10, 2015 Tr. 8.) Hollomond expressed confusion and was allowed to confer with counsel. (Dec. 10, 2015 Tr. 8.) After Hollomond conferred with counsel, the Circuit Court questioned Hollomond as follows:

> THE COURT: My question for you, Mr. Hollomond, is: Do you understand that we're here today for a trial with the judge, not a jury?
> THE DEFENDANT: Yes, I do.
> THE COURT: You're prepared to proceed with trial by judge and not a jury?
> THE DEFENDANT: Yes, sir.
> THE COURT: You understand that you have a right to that, but now you're waiving that right and proceeding?
> THE DEFENDANT: Yes, sir.
> THE COURT: And the Commonwealth concurs in that?

---

[7] Hollomond cites Federal Rule of Criminal Procedure Rule 23(a) which requires a waiver of the right to a jury trial in writing. (ECF No. 2, at 27–29.) Hollomond was tried in state court, not federal court, thus, Rule 23(a) does not apply to his criminal proceedings. Virginia has no requirement that a written waiver must be executed.

>        MS. ABBEY: Yes, your Honor.
>        THE COURT: The Court concurs in that. Did you understand all of the questions that I've asked of you, sir?
>        THE DEFENDANT: Yes, I do, sir.
>        THE COURT: And do you understand that if the Court tries you that this Court would also sentence you if you're convicted?
>        THE DEFENDANT: Yes.
>        THE COURT: Any question you want to ask me about what I just went through?
>        THE DEFENDANT: No, I do not.
>        THE COURT: The Court finds your not guilty pleas have been made freely and voluntarily. The Court accepts those pleas of not guilty.

(Dec. 10, 2015 Tr. 9–10.) Hollomond's contention that counsel told him just to go forward with the bench trial, and so he did, but without understanding that he was waiving his right to a jury trial, is contrary to his specific, sworn statements to the Circuit Court. Hollomond, in essence, now suggests that his answers to the Circuit Court were not true. However, Hollomond is bound by the statements he made under oath that he was knowingly waiving his right to a jury trial. *Cf. Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005), *abrogated by McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted) (explaining that "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") Additionally, the Circuit Court observed Hollomond's demeanor during its questioning of Hollomond both prior to his trial and during the post-trial motion to set aside the verdict, and found that Hollomond's waiver of his jury trial right was knowing and voluntary.[8]

Finally, Hollomond's allegations are also internally inconsistent and reflect Hollomond's tendency to bend the truth. In his Memorandum in Support, Hollomond "contends that he agreed to the judge presiding over the proceeding on December 10, 2015 because Hadeed advised him

---

[8] The Circuit Court also found Hollomond's late attempts to demand a jury trial were merely dilatory in nature. This conclusion is eminently reasonable given the record.

12

just to go forward with the judge, which he took to mean that the judge would only be presiding for that day and sometime later he would be tried by jury." (ECF No. 2, at 4.) As a preliminary matter, in this statement, Hollomond essentially affirms that he knowingly agreed to proceed with a judge, not a jury, despite his purported unwaivering desire for a jury trial. The remainder of Hollomond's contention wholly defies belief and is incredible. Hollomond basically suggests that he thought he would have two trials, one with a judge that day, and a later trial by a jury.[9] At the time Hollomond agreed to waive his right to a jury and to proceed with a trial by judge, no one, including Hollomond, knew that the trial would not conclude that day and would need to be continued. (*See* Dec. 10, 2015 Tr. 70–71, 84.)[10] The Court need not further address this entirely frivolous argument that is not supported by the record. In sum, Hollomond fails to demonstrate that the state court's determination that he knowingly waived his right to a jury trial was incorrect, much less unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2).[11]

---

[9] As Respondent points out, this was not Hollomond's first experience with the Virginia criminal justice system. In fact, Hollomond was charged with two counts of drug distribution, *third offense*, and he had previously been convicted of six felonies and "numerous misdemeanors." (ECF No. 16, at 17 (citing Feb. 3, 2017 Tr. 23–24)). Thus, Hollomond's suggestion that he thought a judge would preside over the trial that day, and then at a later time he would also have a jury trial, is simply incredible.

[10] Notably, the confidential informant did not testify on the December 10, 2015 trial date but was rescheduled to testify on the December 16, 2015 continued date. (Dec. 10, 2015 Tr. 84–85.)

[11] Respondent fairly construes Hollomond also to argue that the Circuit Court erred in denying his motion to withdraw his waiver or grant a mistrial. (*See* ECF No. 16, at 7–8; ECF No. 1, at 16.) The Court of Appeals of Virginia also addressed this claim in the above-quoted portion of its opinion denying the petition for appeal and found such a claim untimely made. (ECF No. 16–2, at 6–7.) Respondent contends that this claim is defaulted because Hollomond failed to raise this claim at the appropriate time. (*See* ECF No. 16, at 8.) In his Response (ECF No. 21), Hollomond specifically states:

> It appears that the Respondent has misconstrued Petitioner's claim. It appears that Respondent's belief is that Petitioner is challenging the state court's decision denying Petitioner's motion to withdraw his oral waiver, and a motion for a mistrial, which is incorrect. Petitioner is simply claiming that the state denied his constitutional right to a jury trial. Any references to the state court's decision

13

Accordingly, Claim One lacks merit and will be DISMISSED.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim Three, Hollomond faults counsel for failing to ensure that his "rights to a jury trial were preserved." (ECF No. 1, at 19.) Hollomond raised this claim in his habeas petition before the Supreme Court of Virginia. In rejecting this claim, the Supreme Court of Virginia explained as follows:

> In an unnumbered claim, petitioner contends he was denied the effective assistance of counsel because counsel, Shannon Hadeed ("Hadeed"), failed to protect petitioner's right to a jury trial and coerced him into proceeding with a

---

denying Petitioner's motion to withdraw his oral waiver or motion for mistrial are only to substantiate his claim that he was denied his constitutional right to a jury trial, which the state conceded to be exhausted.

(ECF No. 21, at 5–6.) Thus, Petitioner has indicated specifically that he is *not* raising a claim challenging the Circuit Court's denial of motion to withdraw his waiver or grant a mistrial, and the Court need not address any procedural default bars.

bench trial. Although he acknowledges waiving his right to a jury trial, petitioner argues that the waiver was not knowing and intelligent due to Hadeed's deficient performance.

The Court holds this . . . claim fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the trial and sentencing transcripts and the motions for mistrial and to set aside the verdict, demonstrates the trial court asked petitioner at the outset of trial if petitioner sought to waive his right to a jury and proceed with a bench trial. Petitioner replied he thought he would be tried by a jury and was surprised by its absence. After being granted a recess to confer with Hadeed, petitioner told the court he understood he appeared in court for a bench trial, was willing to waive his right to a jury trial, and was prepared to proceed with the bench trial. The Commonwealth and the court concurred in the waiver of a jury trial, and the Commonwealth presented a portion of its evidence before the first day of trial concluded.

Six days later, when the bench trial resumed, Hadeed filed a motion for a mistrial contending petitioner had been denied his right to a jury trial. *See Cokes v. Commonwealth*, 280 Va. 92, 97 (2010) (discussing defendant's constitutional and statutory right to a jury trial). The motion asserted petitioner "at all times desired a jury trial," did not "understand the purpose" of the colloquy on the first day of trial, and thought he "would still have trial by jury, but on a different date." The court held petitioner knowingly and intelligently waived a jury trial, declined to enter a mistrial, and found petitioner guilty as charged at the conclusion of trial. Hadeed moved to set aside the verdict on the same grounds and obtained leave to withdraw.

A different court-appointed attorney represented petitioner at sentencing, when the court considered the motion to set aside the verdict. After petitioner waived attorney-client privilege, Hadeed testified she conducted pre-trial discussions with petitioner concerning whether to request a jury trial or a bench trial. Petitioner said he wanted a bench trial and reaffirmed this preference during conversations on the morning of the first day of trial. Hadeed never heard petitioner say he wanted a jury trial until the colloquy with the court occurred. Thereafter, during the recess, Hadeed asked petitioner if he had changed his mind and whether he wanted to go forward with the judge or a jury. Petitioner answered, "The Judge." Hadeed replied, "This is the judge. The trial will be in front of this judge now." Before the second day of trial began, petitioner asked when the jury was going to "show up." Hadeed responded a jury would not be present because petitioner had consented to a bench trial.

Petitioner testified he told Hadeed he wanted a jury trial and believed he appeared in court for one. Notwithstanding petitioner's confusion that a jury was not present, Hadeed instructed him during the recess to "[j]ust go forward with it." Even though the trial began before the judge, petitioner trusted Hadeed and thought she was "going to get me a jury trial." Without commenting on Hadeed or petitioner's credibility, the court adhered to its earlier ruling that petitioner knowingly and intelligently waived his right to a jury trial.

15

> Petitioner fails to allege or demonstrate in what respect the waiver of a jury trial affected the outcome of trial.[12] Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 16–4, at 1–3 (footnote number altered from original) (first alteration in original). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts by the Supreme Court of Virginia in the dismissal of Claim Three. *See* 28 U.S.C. § 2254(d)(1)–(2).

As a preliminary matter, this Court has already found that the state court's determination that Hollomond knowingly and voluntarily waived his right to a jury trial was not unreasonable based on the record. Thus, because he waived his right to a jury trial, Hollomond fails to demonstrate any prejudice from counsel's purported failure to ensure that Hollomond received a trial by jury. Moreover, overwhelming evidence existed of Hollomond's guilt of two counts of drug distribution. The jury, much like the judge, would have heard the testimony of the witnesses, and as the Court has already concluded, any rational trier of fact would have found Hollomond guilty. Thus, Hollomond fails to establish that, if counsel had more thoroughly explained to him his right to a jury so he could preserve his right, and he had actually had his case tried before a

---

[12] Although prejudice may be presumed in rare cases where the defendant was completely or constructively denied counsel, *see United States v. Ragin*, 820 F.3d 609, 618–19 (4th Cir. 2016) (prejudice presumed where counsel slept through significant portions of trial), "prejudice has not been presumed in cases involving claims of ineffective assistance of counsel in connection with jury-trial waivers." *State v. Feregino*, 756 N.W.2d 700, 707 (Iowa 2008) (citing *Sowell v. Bradshaw*, 372 F.3d 821, 836–38 (6th Cir. 2004); *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998)); *see also Commonwealth v. Mallory*, 941 A.2d 686, 697–98 (Penn. 2008) ("This not uncommon my-record-waiver-was-my-lawyer's-fault claim is far removed from the 'constitutional, structural' error that would be at issue if a timely jury demand was wrongly denied."). Therefore, petitioner was required to show a reasonably probability that Hadeed's alleged failure prejudiced the outcome of his case. *See Strickland*, 466 U.S. at 687.

16

jury, the result of the trial would have been different. The Supreme Court of Virginia's conclusion that this claim lacked merit because Hollomond failed to demonstrate any prejudice was not unreasonable. For this reason alone, Claim Three may be DISMISSED.

Additionally, although the Supreme Court of Virginia dismissed this claim solely because Hollomond failed to demonstrate any prejudice, the record also reflects that counsel was not deficient. As the record establishes, counsel was dealing with a difficult client. Counsel, at least twice, brought Hollomond's purported confusion about his jury trial waiver to the Circuit Court's attention. Prior to the second day of trial, counsel filed a motion for a mistrial and argued that Hollomond should be permitted to withdraw his waiver during the middle of trial because he did not understand the waiver. (Dec. 16, 2015 Tr. 9–11.) The Circuit Court denied the motion as having "every indicia of obstruction and seeking to gain a benefit simply because we had to continue the trial," and because the record established Hollomond knowingly and voluntarily waived his right to a jury. (Dec. 16, 2015 Tr. 12–13.)

Prior to the sentencing hearing, counsel filed a motion to set aside the verdict "in the abundance of caution" based on Hollomond's complaints about his desire for a jury trial. (Feb. 3, 2017 Tr. 13.) Counsel also moved to withdraw. (Feb. 3, 2017 Tr. 13.) The Circuit Court heard testimony from both counsel and Hollomond. Counsel testified that she discussed with Hollomond whether he wanted a trial by judge or jury at least twice before the first day of his trial. (Feb. 3, 2017 Tr. 9–10.) Counsel explained the differences and potential outcomes of each, and Hollomond indicated that he wanted a trial by judge. (Feb. 3, 2017 Tr. 9–10.) Counsel met with him multiple times the day of trial because she was still recommending for him to take the plea offer, and Hollomond affirmed his desire to go to trial, and to go forward with a trial by a judge. (Feb. 13, 2017 Tr. 10.) Counsel again explained to Hollomond his right to a jury during the plea colloquy where she

17

> reiterated we've been over this. Are you changing your mind? What do you want to do? Do you want to go forward with the judge or the jury? And he said, [t]he judge. I said, [t]his is the judge. The trial will be in front of this judge right now. This is when we were taking our little mini recess at counsel table, and he turned to the Judge, and we continued the soliloquy, and he said, Yes, a trial by judge, and the trial began.

(Feb. 3, 2017 Tr. 10–11.) Prior to the second day of trial, Hollomond asked her "when the jury was going to show up." (Feb. 3, 2017 Tr. 11.) Counsel explained "that the jury was not going to be showing up, that we started the trial and that he was being tried by the Judge. We had discussed at that point multiple times at the jail, meeting with him prior to the trial starting, and here at court in the back prior to the trial starting." (Feb. 3, 2017 Tr. 11.)

Prior to sentencing, Hollomond sent counsel multiple letters seeking a diversion program instead of sentencing. (Feb. 3, 2017 Tr. 12.) Counsel explained that he did not qualify, and at that point the "nature of his letters changed, and he sent both myself and the Court letters regarding how he felt his constitutional rights had been violated and that he clearly wanted a jury trial the whole time." (Feb. 3, 2017 Tr. 12.) In response to these letters, counsel filed a motion to set aside the verdict and, subsequently, a second motion to withdraw (Feb. 3, 2017 Tr. 13.)

Hollomond testified that he told counsel that he wanted a jury, and that counsel told him she would file a motion for a mistrial prior to the second day of trial, which she, in fact, did. (Feb. 3, 2017 Tr. 18.) Hollomond indicated that after his trial, he "didn't know about [his] constitutional amendment at that time," and threatened counsel in a letter "that I would like for you to try to see if you can get me some type of help or some type of program, and I'm going to let Judge Wright know that you tricked me into a bench trial . . . ." (Feb. 3, 2017 Tr. 19.) Hollomond explained that he only learned about his "constitutional amendment" after trial when he "started studying the lawbooks" after trial. (Feb. 3, 2017 Tr. 20.) Hollomond later testified that he only learned about his Sixth Amendment to a jury trial after counsel sent him the motion to set aside the verdict. (Feb.

18

3, 2017 Tr. 35–36.) Hollomond testified that counsel's testimony during the hearing was "not true" and that at all times he told her he wanted a jury trial. (Feb. 3, 2017 Tr. 20–22.)

After hearing the testimony of both counsel and Hollomond, the Circuit Court noted that "we've been over this now a couple of times," and explained that "the Court went to some length to make sure, as I think the transcript reflects, to make sure that Mr. Hollomond understood what was going on and what his rights were." (Feb. 3, 2017 Tr. 36–37.) The Circuit Court refused to accept Hollomond's version of the events and denied the motion. (Feb. 3, 2017 Tr. 36–37.) Although counsel attempted to have the trial set aside, the Circuit Court simply did not believe Hollomond's contention that his jury trial waiver was anything other than knowing and voluntary. Therefore, Hollomond fails to suggest what further action counsel could have taken. The Court concludes that Hollomond fails to demonstrate that counsel was deficient or that he was prejudiced. Accordingly, Claim Three lacks merit and will be DISMISSED.

## VI.  CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 14) will be GRANTED. Hollomond's claims will be DISMISSED, and his § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[13]

An appropriate Final Order shall issue.

/s/ RCY
Roderick C. Young
United States Magistrate Judge

Date: September 15, 2020
Richmond, Virginia

---

[13] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Hollomond fails to meet this standard.